IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

AURORA ESCOBAR,   Case No.:25-cv-22935-JEM

    Plaintiff,   JURY TRIAL DEMANDED

    v.

GOYA FOODS, INC., d/b/a GOYA FOODS
OF FLORIDA

    Defendant _____/

## **AMENDED COMPLAINT**

Plaintiff, AURORA ESCOBAR, through her undersigned counsel, sues Defendant, GOYA FOODS, INC., d/b/a GOYA FOODS OF FLORIDA ("Goya") and alleges as follows:

### **Preliminary Statement**

After years working for Goya, Ms. Escobar had the misfortune of being assigned to Goya's Traffic Department to work alongside Celestino Diaz. This department was and continues to be under the direct supervision of Luis Benitez, with whom Ms. Escobar was previously acquainted and had no issue working with in the past. From the start, Diaz proved to be inappropriate and disrespectful toward Ms. Escobar, making lewd comments and unwanted sexual advances because of her sex. Over the next few years, however, it became increasingly difficult for Ms. Escobar to complete her work and function at Goya as she became more concerned about her physical safety due to Diaz's inappropriate comments and unwanted sexual advances which escalated to harassing phone calls, physical aggression, and open derision toward her at work. After Ms. Escobar sought help from Goya's Human Resources Department, the situation became far worse.

In addition to the hostile environment created by Diaz's sexual harassment, Benitez reacted

to Ms. Escobar's complaints regarding the harassment she was suffering with open hostility toward her. This retaliatory hostility has grown over time into a pervasive campaign by Benitez to belittle Ms. Escobar through mockery, intimidation, and aggression, as well as micromanaging and forced isolation from her co-workers. All of this has made it increasingly difficult for Ms. Escobar to get through a workday at Goya, let alone complete her work. Ms. Escobar's health has suffered as a result, and she experiences anxiety and depression, as well as physical symptoms including headaches, stomachaches, and nausea on nearly a daily basis.

## Nature of the Action

1) This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), as a result of unlawful and discriminatory employment practices on the basis of gender and retaliation. Ms. Escobar seeks compensatory damages, punitive damages, and attorneys' fees and costs.

## Parties

2) Plaintiff Aurora Escobar is a resident of Miami-Dade County, Florida, over the age of eighteen, and otherwise sui juris in all respects. Ms. Escobar is a female. As such, she is a member of a protected group because of her gender.

3) Defendant Goya is registered to conduct business in the State of Florida, and at all material times hereto was conducting business in and was engaged in substantial and not isolated activity in the State of Florida. At all times relevant and material hereto, Goya operated out of the same premises in Miami, Florida.

4) At all times relevant and material hereto, Defendant Goya was a covered "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

5) Upon information and belief, Goya has had in excess of 500 employees in each

calendar week in the year 2025.

6) Since approximately 2003, Ms. Escobar has been an "employee" of Goya within the meaning of 42 U.S.C. § 2000e(f).

### Jurisdiction and Venue

7) This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims alleged by Ms. Escobar arise under the laws of the United States.

8) This Court has personal jurisdiction over Defendant, which conducts business in, and committed discriminatory acts in, Miami-Dade County, Florida.

9) Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as the employment practices alleged by Ms. Escobar were committed within this District, and because the parties reside in this District.

### Factual Allegations

10) At all times relevant and material hereto, Luis Benitez ("Benitez") was employed by Goya as the Director of Operations and Logistics, and Benitez was a "supervisor," as that term is used under the applicable laws.

11) At all times relevant and material hereto, Celestino Diaz ("Diaz") was also employed by Goya in its traffic department.

12) Ms. Escobar was first employed by Goya in or around 1996 and worked there until about 1998. On or about May or June of 2003, Ms. Escobar returned to work for Goya, and she continues to work there to date.

13) Before the events described herein, Ms. Escobar had never been disciplined for any reason during her employment at Goya. To the contrary, she was praised for her work and given additional responsibilities over the years.

14) Starting in or around February 2021, Ms. Escobar began working in the traffic department alongside Diaz. Benitez was the supervisor of both Ms. Escobar and Diaz.

15) From their initial introduction, Diaz made inappropriate comments regarding Ms. Escobar's appearance.

16) Over time, these comments became increasingly inappropriate. Examples of the types of inappropriate and unwanted comments made by Diaz towards Ms. Escobar include using disrespectful terminology to refer to her body or to refer to her as his girlfriend despite her repeated rejections of his advances; comments to effect that she needed a "macho" or a Cuban man like him in order to know a real man in bed;; commenting disrespectfully on how her pants looked on her or on the way her breasts or hips moved when she walked by, and telling her he wanted to touch them; saying her perfume and her smell "drove him crazy"; bringing her food like bananas and then calling her on the office phone to tell her he wanted to see her eat it and that "it would excite him"; and warning her not to get too close to him or walk by him because he would get an erection if she did.[1]

17) Because of the office layout, Ms. Escobar had to walk by Diaz's desk each day to drop off or pick up documents and was endlessly subjected to comments such as these.

18) Despite Ms. Escobar's requests that Diaz stop his inappropriate behavior and unwanted sexual advances, Diaz's comments to Ms. Escobar escalated to a pattern of harassing language, phone calls, unwanted sexual advances, and aggressive behavior, all of which created a hostile work environment. Ms. Escobar felt very distressed because of the barrage of comments and behavior which became increasingly disrespectful.

---

[1] These are roughly translated quotes since most of these comments were made at least partially in Spanish.

19) On one occasion Diaz placed a note on Ms. Escobar's desk inviting her to join him at a happy hour. When Ms. Escobar refused the invitation, Diaz angrily balled the note up and threw it at her.

20) In another instance of Diaz's escalating pattern of harassment, he approached Ms. Escobar's desk to show her a picture of herself and told her he "used it to masturbate."

21) Around this time, Ms. Escobar also began receiving calls to her cell phone from a blocked phone number, which she came to realize were from Diaz. During these calls, the caller would not speak, but it sounded as though a man was masturbating. During one such call, someone spoke in the background and called out Diaz's name, confirming Ms. Escobar's suspicions. After this call, Ms. Escobar confronted Diaz, who then became visibly nervous and ran out of the office.

22) By August 2022, Diaz's behavior had caused Ms. Escobar to inform the Human Resources Department at Goya, through its "H.R. Representative," of the increasingly inappropriate behavior, comments, and unwanted sexual advances from Diaz which were making the workplace extremely uncomfortable for Ms. Escobar. Though Goya was on notice of the harassment Ms. Escobar was suffering, it failed to conduct a proper investigation into Ms. Escobar's complaint and allegations of harassment.

23) Goya also failed to take any corrective steps to improve the situation. Instead, Goya continued to require her to work directly with Diaz.

24) On or about November 17th or 18th, 2022, Ms. Escobar went to the printer by Diaz's desk to pick up a document and found that it was not there. She asked Diaz if he had thrown it out and he got up, found the document in the trash, then balled the pages up and threw them at Ms. Escobar in the middle of the office and told her that she was "unbearable." Diaz then took the paper back so she could not have it. Ms. Escobar became frightened and moved away from Diaz,

who told her he was going to talk to Benitez, their supervisor, so that "he could throw her to the lions and get her kicked out of Goya."

25) Rather than discipline Diaz, Ms. Escobar's harasser, Benitez called a meeting with Ms. Escobar and the H.R. representative where he verbally berated Ms. Escobar while aggressively banging his fist on his desk, in an apparent (and successful) attempt to intimidate her. Benitez did not even allow Ms. Escobar the opportunity to speak.

26) Again, Goya took no corrective action and forced Ms. Escobar to endure an increasingly hostile work environment.

27) Further, Ms. Escobar was repeatedly told by Goya's H.R. Representative that Goya's management had been informed of Ms. Escobar's complaints and that if Ms. Escobar were to put her complaints regarding Diaz in writing or go to anyone other than the H.R. Department, she would be fired by Goya.

28) As a direct result of Ms. Escobar's complaints to Goya's HR Department, Diaz's hostile, improper and illegal conduct toward Ms. Escobar continued and intensified, causing Ms. Escobar to suffer severe anxiety and emotional distress, at times suffering physical symptoms of the anxiety and distress.

29) The treatment Ms. Escobar endured at Goya differed markedly from the experience of male employees at Goya, none of whom were expected to silently withstand campaigns of verbal and sexual harassment and physical intimidation while they tried to do their jobs.

30) Despite the severity of the afore-described unlawful and unwanted behavior, following her multiple complaints to management through the HR department, Goya did nothing to curtail the harassment or hostile work environment created by Diaz and tolerated by Benitez. Instead, Goya and its senior management retaliated against Ms. Escobar for reporting Diaz's

unacceptable actions.

31) Since making her complaints to the HR Department, Ms. Escobar is increasingly fearful at work and has come to expect that she will be verbally berated by Benitez anytime he calls her into his office. On several occasions Benitez has become very aggressive towards Ms. Escobar, yelling at her and hitting his desk, becoming agitated with her and blaming her for things that had nothing to do with her.

32) Benitez's post-complaint hostile conduct toward Ms. Escobar is in retaliation for Ms. Escobar's complaint about Diaz and is seemingly intended to force Ms. Escobar to resign because of the unbearable hostility towards her.

33) Benitez regularly exercises his supervisory authority over Ms. Escobar to micro-manage, intimidate, and bully her. By way of example, Benitez often glares menacingly and excessively at Ms. Escobar when in proximity to her, which has frightened and unnerved her while she was trying to work.

34) In early July 2024, Benitez called Ms. Escobar into his office and yelled aggressively at her, stating he was fed up with the complaints. When she asked what he was referring to, Benitez became more aggressive, yelling and banging on his own desk with his fist. Benitez also told her that he wanted to throw her out. Ms. Escobar became very frightened and began to tremble. She remained silent because she was afraid to say anything to him, but after leaving his office she went straight to the bathroom and began vomiting from the fear and anxiety this interaction caused her.

35) Having failed to secure Ms. Escobar's resignation through his threats and hostilities, Benitez has escalated his efforts to interfere with Ms. Escobar's ability to competently and successfully perform the essential duties and functions of her position. Among other retaliatory

acts, Goya has taken steps to isolate and ostracize Ms. Escobar in the workplace. Some of Ms. Escobar's co-workers have privately admitted to her that they were told by their own supervisors not to speak to her in the office. Ms. Escobar was told that this instruction came from Benitez. Benitez himself has often purposefully called away drivers or other employees he sees approaching Ms. Escobar's desk or speaking to her.

36) In addition to being humiliating, this isolation has made doing her job increasingly difficult. Other employees with whom she needs to communicate to effectively do her job, including other supervisors, drivers, and other departments at Goya, will not communicate with her for fear that they too will see repercussions from Benitez.

37) On August 2, 2024, Ms. Escobar was given a spurious "warning" by Goya, ostensibly for "disrupting the operation" by failing to communicate with other employees. Benitez delivered the warning in a meeting with Ms. Escobar, along with telling Ms. Escobar about another employee Goya had recently fired. Benitez would not let Ms. Escobar speak and when the HR representative asked her if she had anything to say, Ms. Escobar said she did not because she feared how aggressive Benitez would become if she spoke.

38) Also in late 2024, Benitez called Ms. Escobar into the conference room and berated her, accusing Ms. Escobar of threatening him and putting a gun to his head while simultaneously miming putting a gun to his own temple and shooting himself. Benitez warned Ms. Escobar that he would not be threatened by anyone. Ms. Escobar interpreted this as a response to her complaints to the HR Department.

39) Ms. Escobar became very frightened about her safety and her employment after this meeting with Benitez. She went home that day feeling extremely distressed and frightened.

Following this incident, Ms. Escobar determined that she had no choice but to seek help outside Goya.

40) The conditions of Ms. Escobar's employment have drastically changed since she complained about Diaz. In addition to being isolated from other employees, when assignments are doled out, Ms. Escobar is ignored and not given instructions or given different information, making it very difficult for her to do her job.

41) Since approximately April 2024, Goya brought in a less-experienced male employee to work in her department alongside her and Diaz. Since then, the younger employee is given all the instructions when work is distributed, and he and Diaz ignore Ms. Escobar's work-related questions, making it very difficult for her to complete her work. They also routinely mock and insult her.

42) Ms. Escobar is also taken away from her responsibilities regularly to "cover" the reception area at Goya. While other employees are also required to take on this extra task from time to time, she has been told that she is called more often because Benitez instructed that Ms. Escobar should be taken whenever someone is needed. Male employees in Ms. Escobar's department, even those with less experience, are not required to "cover" reception. Goya's tactic of diverting Ms. Escobar from her regular responsibilities to "cover" the reception area is clearly designed to frustrate and delay her ability to complete her normal assignments, as well as being a means to fabricate additional grounds over which to improperly reprimand her. After being instructed to work in this other department and being taken away from her own tasks, Ms. Escobar is often chastised by Benitez for taking longer to complete her own work.

43) For several years of her employment with Goya, Ms. Escobar had the opportunity to do overtime work for increased pay. Benitez recently instructed her, however, that she was no

longer allowed to do any overtime work. Later, the HR Representative instructed that she could do minimal overtime work, much less than she was previously allowed before her complaints regarding Diaz, and only on days when Goya had no choice but to allow her to stay due to scheduling. Upon information and belief, other employees continue to have the opportunity to complete overtime work without restriction.

44) In retaliation for her complaints to HR, Goya has also singled out Ms. Escobar in requiring her to make additional arrangements in order to take her vacation time. While Diaz and the other male employee working in her department are not required to clear or coordinate any of their vacation time with each other or with Ms. Escobar, Goya has required Ms. Escobar to coordinate and clear all her vacation time requests through Diaz – her workplace harasser and a co-worker with far less seniority than Ms. Escobar.  This policy is an apparent effort to make Ms. Escobar's time at work even more difficult and humiliating.

45) Benitez also demeans and ridicules Ms. Escobar repeatedly and publicly in the presence of her colleagues. On other occasions, he completely ignores her, instructing other employees around her and making a deliberate effort to act as though she is not even there. This demeaning treatment has caused Plaintiff tremendous embarrassment and emotional distress.

46) Subsequent to her complaint to HR, Ms. Escobar has also been excluded from events such as employee holiday celebrations and gift exchanges planned in the office, and mocked openly by male co-workers who joke about her physical appearance. As a result, she often feels embarrassed and humiliated at work.

47) Ms. Escobar's health has suffered as the direct result of the hostile treatment and retaliatory actions taken by Goya. Ms. Escobar suffers from increased anxiety, depression, difficulty sleeping, fatigue, difficulty concentrating, and feelings of mental anguish. She also

experiences difficulty with social situations outside of work, even with her loved ones, because of her anxiety and depression. She feels physically and psychologically intimidated by Benitez and Diaz, and suffers from physical symptoms including headaches, stomachaches, and nausea. Ms. Escobar has sought the help of medical professionals to help manage these symptoms.

48) Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about January 21, 2025, alleging sex discrimination, sexual harassment, and retaliation by Goya.

49) After filing her Charge of Discrimination with the EEOC, Ms. Escobar has experienced further increased hostility and retaliation from Goya, especially from her supervisor, Benitez. This includes atypical and baseless scrutinization of Plaintiff's everyday tasks. Recently, Ms. Escobar was informed by another employee that they had been instructed to keep a close eye on anything Ms. Escobar did during the workday and that Benitez wanted reports on Ms. Escobar because Ms. Escobar was a "problematic person" who made complaints.

50) The EEOC issued its Notices of Right to Sue on May 21, 2025 and May 27, 2025 (copies attached as Composite Exhibit "1").

51) Plaintiff has exhausted her administrative remedies.

52) Plaintiff has retained the undersigned counsel to protect her rights and is responsible for all reasonable attorney's fees.

53) All conditions precedent to the bringing of this action have been satisfied or waived.

**COUNT I - VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**SEX-BASED HOSTILE WORK ENVIRONMENT**

54) Plaintiff adopts, realleges and incorporates herein each and every allegation contained in Paragraphs 1 through 53 above.

55) This is an action by Plaintiff against Defendant Goya for creating and permitting a hostile work environment based upon gender, and brought under Title VII, 42 U.S.C. § 2000e *et seq*.

56) Plaintiff is a female and is therefore a member of a protected class on the basis of her gender. At all material times, Plaintiff was an employee, and Defendant Goya was her employer covered by and within the meaning of Title VII of the Civil Rights Act of 1963, 42 U.S.C §2000e.

57) Plaintiff was qualified for the position that she held with Goya.

58) Plaintiff has been subjected to unwelcome harassment in the workplace on the basis of her gender, including among other things, sexual intimidation, ridicule, insults and unwanted sexual advances.

59) The sexually discriminatory, hostile, and abusive working environment that Plaintiff has been subjected to has been severe and pervasive, and has altered the terms and conditions of her employment with Defendant Goya.

60) Defendant Goya is directly liable for the disparate treatment and hostility towards Plaintiff, because it was aware of the abusive environment to which Plaintiff was subjected and yet it took no action to address the abuse. In fact, Goya's managerial employee, Benitez, created, perpetuated and facilitated the abusive and hostile work environment at Goya.

61) Plaintiff perceived the working environment at Goya to be hostile.

62) A reasonable female person in Plaintiff's circumstances would consider the working environment at Goya to be hostile.

63) The harassment complained of herein affected the terms, conditions, and privileges of Plaintiff's employment.

64) Defendant's conduct constitutes intentional gender-based discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*

65) Plaintiff has suffered damages as a direct and proximate result of Defendant's conduct described above and is entitled to recover these damages from Defendant.

66) Because Defendant acted with malice and with reckless disregard for Plaintiff's protected rights, Plaintiff is entitled to punitive damages.

67) Plaintiff is entitled to an award of costs and attorney fees pursuant to 42 U.S.C. § 2000e 42 U.S.C. § 2000e.

WHEREFORE, Plaintiff Aurora Escobar prays for judgment against Defendant Goya for compensatory damages including both pecuniary and non-pecuniary losses, prejudgment interest, punitive damages, attorney fees and costs .

### COUNT II – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 RETALIATORY HOSTILE WORK ENVIRONMENT

68) Plaintiff adopts, realleges and incorporates herein each and every allegation contained in Paragraphs 1 through 53 above.

69) Plaintiff engaged in conduct protected by Title VII, 42 U.S.C. § 2000e *et seq.* when she complained to Defendant about the sex discrimination and hostile work environment that she was subjected to as described and set forth above.

70) On multiple occasions, Plaintiff complained about Defendant's unlawful employment practices, and otherwise engaged in statutorily protected activity. Examples of such complaints and statutorily protected activity include, but are not limited to the following:

    a) Multiple complaints to Defendant's HR department as set out above.

    b) Making her supervisor Benitez aware of the sexual harassment and hostile work environment that she faced due to Diaz's conduct, as described above.

    c) Filing a Charge of Discrimination with the EEOC on or about January 21, 2025.

71) Because of Plaintiff's protected conduct, Plaintiff has been and continues to be subjected to a retaliatory and hostile, offensive, and abusive working environment, which has included repeated acts of intimidation, harassment, ridicule, and other actions designed to alter the terms, conditions, and privileges of Plaintiff's employment.

72) As described above, in retaliation for Plaintiff's protected activities, Defendant has subjected Plaintiff to a retaliatory hostile work environment that has included but has not been limited to frequently and continuously subjecting Plaintiff to the following:

    a) Excluding Plaintiff from opportunities to work overtime and earn additional compensation without any basis.

    b) Subjecting Plaintiff's work to heightened scrutiny.

    c) Subjecting Plaintiff to contrived accusations of infractions and unfounded reprimands.

    d) Targeted monitoring and tracking of Plaintiff to create meritless grounds to discipline Plaintiff.

    e) Subjecting Plaintiff to unjust public ridicule by her supervisor.

    f) Requiring Plaintiff to continue working in close proximity to her harasser Diaz, and requiring her to get permission from him before she can take any vacation time.

    g) Refusing to address Plaintiff's complaints or take any corrective action to prevent and/or eradicate retaliatory and discriminatory acts against Plaintiff.

    h) Subjecting Plaintiff to frequent and continuous harassment and allowing such harassment to continue without impediment.

    i) Cultivating an office environment where Plaintiff and her appearance are openly mocked by male co-workers without recourse.

j) Sabotage of Plaintiff's work and efforts to conduct her job duties.

k) Atypical and baseless scrutinization of Plaintiff's everyday tasks.

l) Other acts, as set forth herein which have altered the terms, conditions, and privileges of Plaintiff's employment and reduced Plaintiff's pay, prestige, and responsibilities.

73) Defendant knew or should have known of the retaliatory hostile work environment to which Plaintiff has been subjected, and failed to take prompt, effective, remedial action upon notice of the same.

74) The retaliatory hostile acts and statements to which Plaintiff was subjected by her supervisor Benitez were psychologically humiliating and unreasonably interfered with Plaintiff's work performance.

75) Defendant allowed its employee Benitez to abuse and misuse his authority while under Defendant's supervision and control by retaliating against Plaintiff and subjecting Plaintiff to a hostile work environment in retaliation for her protected activities.

76) The retaliatory acts and statements which Defendant and its employees committed and allowed to be committed against Plaintiff were so severe and pervasive that Plaintiff believed (and any reasonable person would have believed) that they materially altered the terms and conditions of Plaintiff's employment, and they in fact did materially alter the terms and conditions of Plaintiff's employment. Furthermore, these acts and statements would dissuade a reasonable worker from making or supporting a charge of discrimination.

77) Plaintiff's participation in protected activities was a primary motivating factor in the hostile work environment to which Plaintiff has been subjected.

78) The actions were taken with reckless indifference to Plaintiff's federally protected rights.

79) Plaintiff has suffered damages as a direct and proximate result of Defendant's conduct described above and is entitled to recover these damages from Defendant.

80) Because Defendant acted with malice and with reckless disregard for Plaintiff's protected rights, Plaintiff is entitled to punitive damages.

81) Plaintiff is entitled to an award of costs and attorney fees pursuant to 42 U.S.C. § 2000e 42 U.S.C. § 2000e.

WHEREFORE, Plaintiff Aurora Escobar prays for judgment against Defendant Goya, for compensatory damages including both pecuniary and non-pecuniary losses, prejudgment interest, punitive damages, attorney fees and costs.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial of all issues so triable.

Respectfully submitted,

**By:** */s/ Andrew V. Tramont*
ANDREW V. TRAMONT, ESQ.
Florida Bar No.: 322830
avt@rtgn-law.com
STEPHANIE THERESE NUÑEZ
Florida Bar No. 099588
stn@rtgn-law.com
PAUL M. NUÑEZ
Florida Bar No.: 124205
pmn@rtgn-law.com

RODRIGUEZ TRAMONT & NUNEZ, P.A.

255 Alhambra Circle, Suite 1150
Coral Gables, Florida 33134
Telephone: (305) 350-2300
Facsimile: (305) 350-2525

*Counsel for Plaintiff*

Case No.:25-cv-22935-JEM

## **CERTIFICATE OF SERVICE**

IT IS CERTIFIED that on July 16, 2025, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system.

By: _/s/ Andrew V. Tramont_